**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Keith E. Gregory,

      Plaintiff,

      v.                               Case No. 1:06cv41

AK Steel Corporation,                Judge Michael R. Barrett

      Defendant.

## OPINION & ORDER

    This matter is before the Court upon Defendant AK Steel's Motion for Summary Judgment. (Doc. 14) Plaintiff Keith Gregory having filed a Response in Opposition (Doc. 20), and AK Steel having filed a Reply (Doc. 21), this matter is ripe for review.

## I.   BACKGROUND

    Gregory, an African-American, began working for AK Steel on February 25, 1971. (Doc. 15, Keith Gregory Depo. at 7) Gregory was a member of the Armco Employees Independent Federation, Inc. ("AEIF"), which represented the hourly production, maintenance, and service employees. (Id.) Gregory was employed as a Maintenance Repairman in the Hot Roll Maintenance Section of AK Steel's Middletown, Ohio Works. (Id. at 10) AK Steel locked out its hourly employees on March 1, 2006. (Id. at 36) Gregory retired during the lock out, in May of 2006. (Id. at 7)

    On March 4, 2003, Gregory made a verbal complaint of racial discrimination to Section Manager Eric Wood concerning Gregory's immediate supervisor, Gary Neltner. (Doc. 20-1, Mattocks Decl. ¶ 4) Gregory's complaint alleged that Neltner had been verbally abusive and had falsely accused him of failing to follow a Daily Maintenance Plan ("DMP").

Gregory also complained that two Caucasian co-workers were not subjected to the same verbal abuse and accusation of failing to follow the DMP. (Id.) Gregory's complaint was forwarded to George Armour, Manager of Union Relations. (Doc. 17, Armour Depo., Ex. 7) Amour's investigation revealed that no racially offensive words were used, but that Neltner admitted that Gregory had followed the DMP. (Gregory Depo. at 26) Amour then met with Gregory and informed him that his complaint had been investigated and resolved. (Armour Depo., Ex. 7) Gregory was not disciplined, and did not lose any pay as a result of the incident. (Gregory Depo. at 26)

On July 16, 2003, another incident occurred between Neltner and Gregory. Neltner accused Gregory of leaving work early the previous day. (Gregory Depo. at 21) Gregory had in fact worked two turns, or shifts. (Id. at 23) Neltner stated that he spoke with everyone else working on the job and they were all there except for Gregory. (Id. at 21) Gregory's Union representative, Bob Mattocks, talked to Neltner and Gregory's co-workers. (Id. at 22) Gregory's co-workers stated that Neltner had not talked to them. (Id.) Gregory complained about Neltner to Hot Strip Mill Maintenance Section Manager Mark Tannreuther, who stated that he forwarded the complaint to Industrial Relations. (Compl. ¶¶ 24-25; Pl. Dep. Exh. 13) Gregory did not receive any discipline or lose any pay as a result of the incident. (Gregory Depo. at 23) Other employees, including Caucasian employees, complained about Neltner's management style. (Tannreuther Decl. ¶ 10) In November of 2004, Neltner was reassigned to a non-supervisory position. (Id.)

Over the next sixteen months, Gregory repeatedly inquired as to the status of his complaint. (Mattocks Decl. ¶ 9). On each occasion, Tannreuther replied that the matter had been forwarded to Industrial Relations, or that Industrial Relations was processing the

complaint, or that he had not yet received a response from Industrial Relations.  (Id.)  It is not clear from the record whether the Gregory's complaint was ever forwarded to Industrial Relations.  AK Steel's "Harassment Allegation Investigation Log" does not include an entry for the complaint.  (Doc. 20-2, Robert Mitchell Decl., Ex. 1)  However, during the course of discovery, AK Steel produced two pages of notes made by Armour which suggest that Tannreuther had forwarded Gregory's complaint to him in July of 2003, and that there was an investigation by Mattocks, as well as then-chairman of the AEIF Civil Rights Committee, John Paynter.  (Tannreuther Depo., Ex. 1)  Yet, Mattocks denies that he was involved.  (Mattocks Decl. ¶¶ 9, 10)  In his deposition, Tannreuther initially stated that he had not forwarded the complaint, then later suggested that he was not sure, or had a "very, very distant, fuzzy recollection" of speaking with Armour.  (Tannreuther Depo. at 25, 26, 50)[1]

On February 6, 2004, Gregory filed a discrimination charge with the Equal Employment Opportunity Commission based upon the July 15, 2003 incident.  (Doc. 18, O'Connor Depo., Ex. 12)  Unable to conclude that there had been a violation, the EEOC closed its file on the charge.  (O'Connor Depo., Ex. 13)

Between June 23, 2004 and July 28, 2005, Gregory filed five grievances, wherein he claimed that he had been reassigned by Tannreuther to jobs without regard to seniority.  (Mattocks Decl. ¶ 11; Tannreuther Decl., Exs. K-O).  In an effort to reduce unnecessary overtime, Tannreuther had begun to temporarily reassign employees performing mostly

---

[1]Since 2003, AK Steel's "Policy on Harassment and Workplace Violence" and Equal Employment Opportunity policy indicate that complaints should be lodged directly with the Manager of Human Resources or Labor Relations.  However, it appears that AK Steel permitted complaints to be brought to supervisors or other members of management for forwarding to the appropriate personnel.  (Mattocks Decl. ¶¶ 4, 8; Armour Depo., Ex. 7)

unnecessary day turn preference jobs to fill shift absences.  (Tannreuther Decl. ¶ 6)  Tannreuther first reassigned Gregory on June 8, 2004.  (Tannreuther Decl., Ex. 4)  In the temporary assignments, Gregory did not experience any change in his schedule, loss of compensation, or loss of job preference standing.  (Tannreuther Decl. ¶ 9)  The only change was in the assigned daily tasks.  (Id.)

Gregory claimed that his reassignments were in retaliation for having filed a complaint of discrimination.  (Id.)  Each grievance was denied at the first step of the grievance procedure.  (Id.)  Six Caucasian employees also filed grievances, claiming that they had been reassigned when they were not the least senior qualified employee. (Mattocks Decl. ¶ 12; Tannreuther Decl. Exs. A-J)  In three of these grievances, AK Steel admitted that reassignments must be made of the basis of seniority.  (Mattocks Decl. ¶ 12; Tannreuther Decl., Exs. B-D)  The remaining grievances were denied on the basis that under the collective bargaining agreement, AK Steel maintained the right to reassign workers at its discretion.  (Id.)[2]  Gregory claims that in denying these grievances, AK Steel provided a greater factual basis for the denial of the grievances filed by Caucasian employees when compared to the denial of his grievances.

On August 11, 2005, Gregory filed a second EEOC charge, alleging race discrimination based upon Tannreuther's failure to forward Gregory's July 2003 complaint to Industrial Relations.  (O'Connor Depo., Ex. 15)  The EEOC dismissed the charge as being untimely.  (Id., Ex. 16)

---

[2]There is nothing in the record to explain this apparent inconsistency.  Regardless, it is undisputed that the group of grievances which were denied included those filed by both Caucasian employees and Gregory.

In his Complaint, Gregory brings claims of (1) hostile work environment based upon race in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and Ohio Rev. Code 4112; (2) disparate treatment on the basis of race in violation of Title VII and Ohio Rev. Code 4112; (3) retaliation in violation of Title VII and Ohio Rev. Code 4112; and (4) breach of Ohio public policy.

## II.   ANALYSIS

### A.   Motion for Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

Moreover, this Court does not have a duty to search the entire record to establish that there is no material issue of fact. *Karnes v. Runyon*, 912 F.Supp. 280, 283 (S.D.Ohio 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). The

non-moving party must designate those portions of the record with enough specificity that the Court can readily identify those facts upon which the non-moving party relies. *Karnes*, 912 F.Supp. at 283.

### B. Hostile Work Environment

Title VII prohibits racial harassment that creates a hostile or abusive work environment. *Newman v. Federal Express Corp.*, 266 F.3d 401, 405 (6th Cir. 2001). In order to establish a *prima facie* case of hostile work environment based on race under Title VII, a plaintiff must show: (1) that he or she is a member of a protected class; (2) that he or she was subjected to unwelcome racial harassment; (3) that the harassment was based on race; (4) that the harassment had the effect of unreasonably interfering with his or her work performance by creating an intimidating, hostile, or offensive work environment; and (5) the existence of employer liability. *Id.*, *citing Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999).

In determining whether there was a hostile or abusive work environment, courts are to look to the totality of the circumstances. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998), *citing Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993). This Court must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. "[T]he issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment case, but whether– taken together – the reported incidents make out such a case." *Williams v. General Motors Corp.*, 187 F.3d

553, 562 (6th Cir. 1999).  Unless extremely serious, isolated incidents of harassment will not amount to discriminatory changes in the terms or conditions of employment actionable under Title VII.  *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000).

AK Steel argues that Gregory cannot show that there was harassment which unreasonably interfered with Gregory's work performance by creating an intimidating, hostile, or offensive work environment.  Gregory points to the two incidents involving Neltner, AK Steel's failure to act on his July 2004 complaint, and Gregory's job reassignments, which were the subject of his five grievances.

As to frequency and severity, the Court finds that there is little to support a hostile work environment claim.  Gregory only cites to eight incidents within a two and a half year period.  There is no evidence that the harassment was physically threatening or humiliating, or had any effect Gregory's work performance.  Moreover, Gregory has failed to tie any of the incidents to race.  There is no evidence that either Neltner or Tannreuther made any racial comments, or referred to Gregory's race.  There are no facts to support an inference that any of the actions taken were based on race.  The record shows that Caucasian employees also complained about Neltner, and were also subject to the temporary reassignments.  When viewing the totality of the circumstances, the Court does not find that Gregory was subject to a hostile or abusive work environment.  Therefore, the Court concludes that AK Steel is entitled to summary judgment on Gregory's claim of hostile work environment.

### C.  Disparate Treatment

Where there is no direct evidence of discrimination, a Title VII gender discrimination claim under a disparate treatment theory is to be analyzed using the burden-shifting

approach first announced in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).[3] A plaintiff has the initial burden of proving a *prima facie* case of discrimination by a preponderance of the evidence. *Id.* at 802. To establish a *prima facie* case of discrimination under Title VII, a plaintiff generally must show that: (1) he or she is a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position in question; and (4) he or she was treated differently from similarly situated individuals outside of his protected class. *Smith v. City of Salem, Ohio*, 378 F.3d 566, 570 (6th Cir. 2004), *citing*, *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000). Direct evidence of discriminatory motive is not required. *Huguley v. General Motors Corp.*, 52 F.3d 1364, 1371 (6th Cir. 1995).

The Court finds that Gregory has not shown that he suffered an adverse employment action. An adverse employment action is a "materially adverse change in the terms and conditions of [plaintiff's] employment." *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999). Examples of adverse employment actions include firing, failing to promote, reassignment with significantly different responsibilities, a material loss of benefits, suspensions, and other indices unique to a particular situation. *Burlington Indus.,*

---

[3]Gregory argues that he has presented direct evidence of discrimination in that AK Steel failed to act on his internal complaint of discrimination. "In discrimination cases, direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999); *see also Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir.2003) (explaining that direct evidence of discrimination does not require factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group). The Court finds that the mere fact that Gregory is African-American, combined with AK Steel's failure to act on his verbal complaint is not direct evidence of discrimination. AK Steel's failure to act could simply be the result of oversight. Therefore, the Court is not required to conclude that unlawful discrimination was a motivating factor, and the *McDonnell Douglas* burden-shifting analysis is proper.

*Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 575-76 (6th Cir. 2004). Employment actions that are *de minimis* are not actionable. *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996). The change in employment terms or conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Hollins*, 188 F.3d at 662. The Sixth Circuit has repeatedly found that an involuntary transfer or reassignment, absent loss of pay or benefits, does not constitute a materially adverse change in employment. *See, e.g., Akers v. Alvey*, 338 F.3d 491, 498 (6th Cir. 2003) (finding no materially adverse change where as a result of plaintiff's involuntary transfer to another office, plaintiff suffered no decrease in pay, her job duties were not significantly changed, and the transfer actually reduced her commute); *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000) (finding no materially adverse change where plaintiff was removal from coordinator position for only approximately ten days with no loss of income). Accordingly, the Court finds that Gregory's temporary reassignments to fill shift absences are *de minimis* employment actions, and do not rise to the level of materially adverse employment actions. Gregory suffered no loss in pay as a result of the reassignments, his job responsibilities were not significantly different, and he worked during his regularly scheduled hours. Similarly, even accepting as true Gregory's claim that in denying the grievances related to the reassignments, AK Steel provided a greater factual basis when denying a Caucasian employee's grievance, the Court finds this to be a *de minimis* employment action.

As other evidence of adverse employment actions, Gregory points to the two incidents involving Neltner and AK Steel's failure to act on his July 2004 complaint about Neltner. However, as a result of these incidents, Gregory did not suffer any loss of

employment, pay, or benefits. There was no effect on his job status or responsibilities.

Gregory attempts to argue that there were changes in "other indices unique to a particular situation," in that he was subject to "unique circumstances." The Court finds that this is a misapplication of the law. The term "other indices unique to a particular situation" is meant to refer to something on the order of transferring an employee at the same salary to "some retched backwater." *White v. Burlington Northern & Sante Fe Railroad Co.*, 364 F.3d. 789, 803-804 (2004) (en banc) (finding reassignment was demotion evidenced by indices unique to the particular situation where new position was by all accounts more arduous and "dirtier;" and required less qualifications, which is an indication of prestige), *aff'd*, 126 S.Ct. 2405 (2006). In contrast, there is no evidence in the record that the jobs to which Gregory was temporarily reassigned were objectively less desirable or prestigious. Likewise, there is no evidence in the record that the two incidents involving Neltner or AK Steel's failure to act on Gregory's July 2004 complaint, caused Gregory any loss of prestige or any other indices unique to the particular situation.

Having found no evidence of an adverse employment action, the Court concludes that AK Steel is entitled to summary judgment on Gregory's claim of disparate treatment.

### 3.     Retaliation

A plaintiff must make out a *prima facie* case of retaliation by establishing four elements: (1) the plaintiff engaged in an activity protected by Title VII; (2) the defendant knew that the plaintiff exercised his or her rights; (3) the defendant took an employment action against the plaintiff that a reasonable employee would have found materially adverse; and (4) there was a causal connection between the protected activity and the adverse employment action. *Burlington*, 126 S.Ct. at 2415.

"Protected activity" refers to opposing any practice made unlawful under Title VII, or making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a). Gregory identifies his protected activity as opposing Neltner's discriminatory conduct, filing EEOC charges in February of 2004 and August of 2005; and filing grievances regarding the job reassignments. The Court finds that Gregory has shown evidence that he engaged in activity protected by Title VII.

AK Steel argues that there is no causal connection between Gregory's protected activity and an adverse employment action. To establish a causal connection, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discriminatory action. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). Causation can be inferred from indirect or circumstantial evidence, such as "evidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights." *Id.* Gregory does not point to any similarly situated employees, but instead relies on the temporal proximity of his protected activity to the alleged adverse employment actions taken against him.[4] Gregory states that in response to his March 2003 complaint, Neltner brought additional false charges in July of 2003. Next, Gregory states that in response to his first EEOC charge, filed on February

---

[4]AK Steel, however, raises the issue of whether the manner in which AK Steel answered the grievances is evidence that AK Steel treated Gregory from similarly situated employees. Even accepting as true Gregory's contention that AK Steel provided a greater factual basis when denying Caucasian employees' grievances, Gregory has not provided any evidence that these employees and Gregory were similarly situated.

6, 2004, Tannreuther began the temporary job reassignments on June 8, 2004. Finally, Gregory explains that in response to the filing of the five grievances between June of 2004 and July 2005, AK Steel refused to act upon his July 2003 complaint.

The Court notes that time period between each pair of protected activity and adverse employment action is less than six months. The Sixth Circuit generally requires a proximity of less than six months. *Nguyen*, 229 F.3d at 566-67. Proof of such temporal proximity between the protected activity and the adverse employment action, "coupled with other indicia of retaliatory conduct," may give rise to a finding of a causal connection. *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007), *quoting Randolph v. Ohio Dep't of Youth Servs*., 453 F.3d 724, 737 (6th Cir. 2006). Gregory has not brought to the Court's attention any other "indicia of retaliatory conduct." However, even assuming *arguendo* that such evidence exists, the Court finds that Gregory has not established a *prima facie* case of retaliation because Gregory has not shown that he suffered an adverse employment action as a result of his protected activity.

The Supreme Court recently addressed the "adverse employment action" standard for retaliation claims under Title VII. *Burlington*, 126 S.Ct. at 2410. Importantly, the Court determined that the scope of Title VII's anti-retaliation provision, unlike its substantive provision, extends beyond workplace-related or employment-related retaliatory acts and harm. *Id.* at 2415. The Court explained that "[a]n employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm outside the workplace." *Id.* at 2412, *citing, e.g., Rochon v. Gonzales*, 438 F.3d 1211, 1213 (D.C. Cir. 2006) (FBI retaliation against employee "took the form of the FBI's refusal, contrary to policy, to investigate death threats a federal prisoner made against [the agent]

and his wife"); *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 984, 986 (10th Cir. 1996) (finding actionable retaliation where employer filed false criminal charges against former employee who complained about discrimination). The Court explained that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Id.* at 2415 (citation and quotation omitted). The Court emphasized that the adverse employment action standard was to be objective and dependant upon context. *Id.* (explaining that "[a] schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children.")

The Court has already determined that Gregory has not shown that he was subject to any materially adverse change in the terms and conditions of his employment. Gregory has not come forward with any evidence of adverse actions which reach beyond workplace-related or employment-related retaliatory acts and harm, let alone those which would be have been materially adverse to a reasonable employee. Moreover, there is little evidence that Gregory was dissuaded from making or supporting his charges of discrimination. Gregory first complained about Neltner in March of 2003. Even though Neltner brought allegedly false charges against him in July of 2003, Gregory complained again about Neltner's behavior, and filed his first EEOC charge on February 6, 2004. After Tannreuther began the temporary job reassignments on June 8, 2004, Gregory filed five grievances between June of 2004 and July 2005. When AK Steel failed to act upon his July 2003 complaint, Gregory filed a second EEOC charge on August 11, 2005. Because Gregory has not established this element of the *prima facie* case, the Court finds that AK

Steel is entitled to summary judgment on Gregory's retaliation claim.

**4.      Discrimination under Ohio law**

The Ohio Supreme Court has held that "federal case law interpreting Title VII of the Civil Rights Act of 1964 is generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981). Based on the Court's foregoing rulings on Gregory's federal claims, the Court finds that AK Steel is entitled to summary judgment on Gregory's state law claims.

**5.      Public policy claim**

Under Ohio law, termination of an at-will employee is wrongful if the termination was against a clear public policy. *Painter v. Graley*, 639 N.E.2d 51, 56 (Ohio 1994). In *Collins v. Rizkana*, the Ohio Supreme Court adopted the following analysis for determining whether the termination was against public policy:

> 1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).

> 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).

> 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).

> 4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

652 N.E.2d 653, 657-58 (Ohio 1995). However, this Court has recognized that Ohio courts have held that "[a] claim for wrongful discharge in violation of public policy embodied in [a] statute prohibiting discriminatory practices will fail if the underlying discrimination claim

fails." *Desanzo v. Titanium Metals Corp.*, 351 F. Supp. 2d 769, 782-783 (S.D. Ohio 2005) (holding that because plaintiff's disability discrimination claim failed, his public policy claim failed as a matter of law); *see also Farrell v. Tipp Mach. & Tool, Inc.*, No. 3:02cv418, 2005 WL 2372857, *9-10 (S.D.Ohio Sept. 26, 2005) (unpublished) (surveying state and federal cases on § 4112 public policy claims and concluding that plaintiffs' common law claims of wrongful discharge in violation of public policy are not cognizable, since the public policy allegedly violated is that established by ADEA and Chapter 4112); *Miller v. Burrows Paper Corp.*, No. 2:06cv790, 2007 WL 1098541, *3 (S.D.Ohio 2007) (unpublished) (noting that this Court has squarely rejected general public policy claims that are premised on statutes prohibiting employment discrimination). Therefore, the Court finds that AK Steel is entitled to summary judgment on Gregory's public policy claims.

## III.   <u>CONCLUSION</u>

Based on the foregoing, Defendant AK Steel's Motion for Summary Judgment. (Doc. 14) is hereby **GRANTED**. This matter shall be **CLOSED** and terminated from the docket of this Court.

**IT IS SO ORDERED.**

_____*/s/ Michael R. Barrett*_____
Michael R. Barrett, Judge
United States District Court